IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Bynum Rayfield, | ) | C/A No. 8:13-cv-03391-TMC-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Willie E. Eagleton, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 44.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on December 2, 2013[1] [Doc. 1] and amended the Petition on December 16, 2013 [Doc. 12]; February 18, 2014 [Doc. 32]; and August 12, 2014 [Doc. 67].  On June 9, 2014, Respondent filed a motion for summary judgment and a return and memorandum to the Petition.  [Docs. 44, 45.]  On June 10, 2014, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 46.]  On August 7, 2014, Petitioner filed a response in opposition.  [Doc. 60.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on December 2, 2013.  [Doc. 1 at 19 (Petition signed on December 2, 2013).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at Evans Correctional Institution pursuant to orders of commitment of the Chester County Clerk of Court. [Doc. 1 at 1.] In March 2002, Petitioner was indicted for multiple counts of criminal sexual conduct with a minor first degree, multiple counts of lewd act upon a minor, and one count of contributing to the delinquency of a minor.[2] [Supp. App. 1–20[3]; *see also* App. 524– 31.[4]] On March 25, 2002, represented by James W. Boyd ("Boyd"), Petitioner proceeded to trial. [App. 1–546.] On March 27, 2002, the jury returned a verdict of guilty on all charges. [App. 538–41.] Petitioner was sentenced to 30 years imprisonment on each criminal sexual conduct with a minor charge, 15 years imprisonment on each lewd act upon a minor charge, and 3 years imprisonment on the contributing to the delinquency of a minor charge. [App. 543.]

---

[2]In his recitation of the attachments to the Return, Respondent indicates that the indictment copies submitted by Petitioner to the court in his post conviction relief appeal appear incomplete. [Doc. 45 at 8.] Accordingly, based on the indictments alone, the Court is unable to determine the exact number of charges of each offense. However, in his charge to the jury, the trial judge stated Petitioner had been charged with three counts of criminal sexual conduct with a minor, first degree; five counts of lewd act upon a minor; and one count of contributing to the delinquency of a minor. [App. 524–31.]

[3]The Supplemental Appendix can be found at Docket Entry Number 45-5.

[4]The Appendix can be found at Docket Entry Numbers 45-1 through 45-4.

**Direct Appeal**

Petitioner appealed his conviction.   On March 25, 2003, Jack B. Swerling ("Swerling") filed a brief on Petitioner's behalf in the South Carolina Court of Appeals, raising the following issues:

>    I.    Did the trial judge err in granting the State's motion made under <u>Batson</u> where the explanation given for the strike was facially gender neutral and where the State was not required to argue or prove through persuasive evidence that the supposedly pretextual strike was made on the basis of gender discrimination?

>    II.   Did the trial judge err in charging the jury that the testimony of the victims "need not be corroborated?"

[Doc. 45-6 at 5.]  The State filed a brief on March 14, 2003 [Doc. 45-7], and Petitioner filed a reply brief on March 25, 2003 [Doc. 45-8].  On January 27, 2004, the South Carolina Court of Appeals affirmed the convictions.  [Doc. 45-9.]  Petitioner filed a petition for rehearing on February 11, 2004 [Doc. 45-10], which was denied on March 18, 2004 [Doc. 45-11].

On April 19, 2004, Petitioner filed a petition for writ of certiorari in the Supreme Court of South Carolina, raising the following issues:

>    I.    Did the Court of Appeals err in finding that it was constrained by precedent to find that the trial judge's clearly erroneous grant of the State's baseless Batson motion and erroneous quashing of the properly drawn jury panel was harmless error?

>    II.   Did the Court of Appeals err in finding that it was constrained by precedent to find that the trial judge's erroneous issuance of a jury charge indicating that the testimony of the victims needed no corroboration did not constitute reversible error where such charge was an improper subject for the charge to the jury and

3

constituted a constitutionally prohibited charge on the facts?

[Doc. 45-12 at 3.]  The State filed a return on May 12, 2004.  [Doc. 45-13.]  On March 3, 2005, the Supreme Court of South Carolina granted the petition for review and ordered additional briefing.  [Doc. 45-14.]

On April 11, 2005, Petitioner filed a brief, raising the following issues:

1.     Whether the Court of Appeals erred in finding that it was constrained by precedent to find that the trial judge's clearly erroneous grant of the State's baseless Batson motion and erroneous quashing of the properly drawn jury panel was harmless error.

2.     Whether the Court of Appeals erred in finding that it was constrained by precedent to find that the trial judge's erroneous issuance of a jury charge indicating that the testimony of the victims needed no corroboration did not constitute reversible error where such charge was an improper subject for the charge to the jury, constituted a constitutionally prohibited charge on the facts, and constituted reversible error in this case where the prosecution relied exclusively on the testimony of the alleged victims as opposed by the testimony of Petitioner.

[App. 551.]  The State filed its brief on May 17, 2005.  [App. 575–87.]  On November 1, 2005, Petitioner filed a motion to argue against precedent [Doc. 45-15], which was granted on November 2, 2005 [Doc. 45-16].   On May 30, 2006, the Supreme Court of South Carolina affirmed the opinion of the Court of Appeals.  [Doc. 45-17.]  Petitioner filed a petition for rehearing on June 14, 2006 [Doc. 45-18], which was denied on July 7, 2006 [Doc. 45-19].  Remittitur was also issued on July 7, 2006.  [Doc. 45-20.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on December 7, 2006.  [App. 589–96.]  Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

> Ineffective assistance of trial counsel, After discovered evidence, Recantment, Rule 5 discovery violation, Amendment XIV Constitutional Violation

[App. 591.]   In support of his grounds for relief, Petitioner provided the following allegations, quoted substantially verbatim:

> <u>Ineffective Assistance of trial counsel</u>
> Lack of investigation
> Lack of expert witness for defense
>
> <u>After discovered evidence</u>
> Letters written to the Judge by victims and their family prior to trial
>
> <u>Recantment</u>
> Victim recantment
>
> <u>Rule 5 Discovery Violation</u>
> No transcribe of states expert doctor given to my trial lawyer prior to trial (what he was going to testify to)
>
> <u>United States and South Carolina Constitutional Violation -
> Amendment XIV, "Due Process"</u>
> Due process violation

[App. 592.]  The State filed a return on January 23, 2007.  [App. 602–06.]  Petitioner, through counsel Charles Brooks, filed a motion to address all issues on June 26, 2007.  [Doc. 45-21.]  The State filed a return to the motion on July 12, 2007.  [Doc. 45-22.]  On January 23, 2009, Petitioner, through counsel Melissa J. Kimbrough ("Kimbrough"),

submitted an amended PCR application.  [App. 598–601.]  The amended PCR application

raised the following allegations of ineffective assistance of counsel:

> A.  Counsel elicited prejudicial testimony during his cross-examination of a state's witness, SR, concerning an alleged "hold" in a bathroom wall of the residence in which applicant lived with S.
>
> B.  Counsel elicited prejudicial testimony during his cross-examination of Dr. Dwight Reynolds, a pediatrician and state's witness, concerning the results of physical/sexual examinations and reported medical histories on the alleged victims.
>
> C.  Counsel elicited during his cross-examination of WM facts amounting to rape (anal intercourse) by the applicant with respect to this witness, when the state had alleged only lewd act and, furthermore, had not elicited any testimony amounting to rape.  There was absolutely no strategic basis for eliciting evidence of rape from a child witness when none had been brought forth on direct examination.
>
> D.  Counsel elicited erroneous and prejudicial information during his cross-examination of Dr. Dwight Reynolds in that he noted a "check" mark had been made on medical examination forms, which is indicative of "live sperm."  This testimony was erroneous, as there was no physical evidence of sexual contact between applicant and any of the alleged victims.  Nonetheless, after eliciting the erroneous information, counsel did not clarify for the jury that no sperm was present and allowed the jury to infer applicant's sperm was present in the victims' vaginas.
>
> E.  Counsel erroneously sought a directed verdict on the charge of contributing to the delinquency of a minor, thereby precluding a directed verdict on the higher charge of criminal sexual conduct, first-degree.
>
> F.  State's witness SR revealed to her aunt that her trial testimony was false.  False testimony denied applicant a fair trial.

6

[App. 599 (internal citations omitted).]

A hearing was held on February 23, 2009, and Petitioner was represented at the hearing by Kimbrough. [App. 607–45.] At the hearing, Kimbrough addressed only the first four of the six issues alleged in the amended PCR application. [Doc. 610–12.] On May 4, 2009, the PCR court filed an order denying and dismissing the application with prejudice. [App. 646–52.] On May 27, 2009, Petitioner filed a motion to alter or amend judgment [App. 653–54], which the PCR court denied on June 19, 2009[5] [App. 655–56]. A notice of appeal was timely filed and served.

On May 27, 2010, Wanda H. Carter ("Carter") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina. [Doc. 45-25.] The petition asserted the following as the issues presented:

> 1.    Trial counsel erred in asking one presecutrix if petitioner anally raped her when the charge involving her was for a single lewd act.
>
> 2.    Trial counsel erred in eliciting testimony regarding medical findings establishing a sexual assault when the actual tests yielded normal examination results.

[*Id.* at 3.] The State filed a return on October 11, 2010. [Doc. 45-26.] On January 13, 2012, the Supreme Court of South Carolina transferred Petitioner's PCR appeal to the South Carolina Court of Appeals. [Doc. 45-27.] On September 3, 2013, the South Carolina Court of Appeals denied the petition for writ of certiorari. [Doc. 45-28.] Remittitur was issued on September 24, 2013. [Doc. 45-29.]

---

[5]The order denying the motion to alter or amend judgment was filed on June 23, 2009. [App. 655–56.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on December 2, 2013. [Doc.

1.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his

Petition pursuant to 28 U.S.C. § 2254:

**GROUND ONE:**   Mr. Rayfield was denied effective assistance of counsel and due process under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel elicited erroneous and prejudicial information during his cross-examination of Dr. Dwight Reynolds, in that he erroneously noted a "check mark" had been made on the medical examination form, which indicates "live sperm". There were absolutely **no** check marks other than "normal exam" and counsel did not clarify for the jury that no sperm was present and allowed the jury to infer Mr. Rayfield's sperm was present in the alleged victims vagina.

*Supporting facts*:   Prior to trial, the alleged victim's were taken to the Lexington Children's Hospital for sexual assault examinations. The State's expert pediatrician, Dr. Dwight Reynolds, found absolutely nothing whatsoever to indicate sexual abuse. Each and every Medical Evaluation Summary indicated "Normal Examination" - and **no** other findings. It should be noted that none of the Medical Evaluation Summaries were ever presented to the jury in any fashion for their deliberation.

The following is an excerpt of Mr. Boyd's (defense attorney) cross-examination of Dr. Reynolds and where this particular error occurred:

[Excerpt of cross-examination.]

**GROUND TWO:**   Mr. Rayfield was denied effective assistance of counsel and due process under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel elicited erroneous and prejudicial information during his cross-examination of Whitney Morris facts amounting to rape (anal intercourse) by Mr. Rayfield with respect to this witness, when the State

8

had alleged only lewd act and, furthermore, had not elicited any testimony amounting to rape. There was absolutely no strategic basis for eliciting evidence of rape from a child witness when none had been alleged or brought forth on direct examination.

*Supporting facts*:      During cross-examination of alleged victim [WM], Mr. Boyd (defense counsel) erroneously elicited evidence of rape (anal intercourse) when rape was **never** alleged by this particular witness and evidence of rape was **not** brought forth on direct examination. The prejudice of this error was heightened when Mr. Boyd asked this alleged victim if it hurt when Mr. Rayfield put his private in her butt and if it hurt badly when Mr. Rayfield put his private in her butt, thereby inflaming the passions and sympathy of the jury.

The following is an excerpt of Mr. Boyd's cross-examination of alleged victim [WM] and where this particular error occurred:

[Excerpt of cross-examination.]

**GROUND THREE:**      Mr. Rayfield was denied effective assistance of counsel and due process under the Sixth and Fourteenth Amendments to the United States Constitution when Mr. Boyd (defense counsel) elicited erroneous and prejudicial testimony during his cross-examination of a State's witness, [SR], concerning an alleged "hole" in a bathroom wall of the residence in which Mr. Rayfield lived with [S], as testimony concerning this alleged "hole" was brought out for the **first time** on cross-examination. Eliciting this testimony was particularly egregious and its prejudice was elevated because it opened the door for further testimony concerning this alleged "hole" by SLED Agent Laurie Caldwell, that would have normally been **barred** had trial counsel **not** elicited this evidence for the first time on cross-examination.

*Supporting facts*:      During cross-examination, Mr. Boyd elicited for the first time erroneous and prejudicial testimony from State's witness [SR], concerning an alleged "hole" in a bathroom wall and, as a result, opened the door for

9

further damning testimony from SLED Agent Lauri Caldwell as follows:

[Excerpt of cross-examination.]

[Excerpt of direct examination.]

[Excerpt of cross-examination.]

[Doc. 1 at 6–14 (emphasis in original) (footnotes omitted).]  On December 16, 2013, Petitioner, with leave of this Court, amended his Petition to add the following ground for relief, quoted substantially verbatim,

**GROUND FOUR:**    Mr. Rayfield was denied effective assistance of counsel under the Sixth Amendment to the United States Constitution when appellate counsel Wanda Carter failed to raise **GROUND THREE** above (in the original Petition) in the State level Petition for a Writ of Certiorari to review denial of Post-Conviction Relief, thereby failing to exhaust all State remedies on said GROUND.

*Supporting facts*:    Having fully litigated GROUND THREE above at Petitioner's State level Post-Conviction Relief Hearing, before the Honorable Kenneth Goode, appellate defense attorney Wanda Carter failed to raise said GROUND in Petitioner's State level Petition for a Writ of Certiorari to review denial of Post-Conviction Relief, thereby failing to exhaust this last State remedy. Petitioner requested that this GROUND be raised in the aforementioned Petition for a Writ of Certiorari (Attachment "D" to the original petition) but appellate counsel declined to do so (Attachment "E" to the original petition.  Refer to GROUND THREE for the merits.

[Doc. 12 at 1.]  On February 18, 2014, Petitioner, with leave of this Court, again amended his Petition to add the following ground for relief, quoted substantially verbatim,

**GROUND FIVE:**    Mr. Rayfield was denied due process and fundamental fairness guaranteed under the Fourteenth Amendment to the United States Constitution when the trial judge erroneously charged the jury over objection that the

10

testimony of the State's victim witnesses needed no corroboration, where such charge was an improper subject for the charge to the jury, constituted a constitutionally prohibited charge on the facts, and constituted reversible error in this case where the prosecution relied exclusively on the testimony of the alleged victims as opposed by the testimony of Petitioner.

*Supporting Facts*:     South Carolina Code Ann. § 16-3-657 (1985) provides, "The testimony of the victim need not be corroborated in prosecutions under §§ 16-3-652 through 16-3-658." The State requested that the trial judge charge the jury pursuant to this section that in particular the testimony of the alleged victims need not be corroborated. Petitioner objected and argued that such would constitute an impermissible charge on the facts. Counsel argued that this type of charge was never given in any other type of case. (Tr. 467–468).

The State argued that the requested charge was proper under State v. Schumpert, 312 S.C. 502, 435 S.E.2d 859 (1993). Defense counsel responded indicating that the Schumpert Court did not approve such a charge, but held only that the giving of the improper charge did not constitute reversible error under the circumstances of that case and given the charge as a whole. (Tr. 468–469). The trial judge disregarded the argument, overruled the defense objection and charged the jury as the State had requested. The judge charged, "I charge you . . . that § 16-3-657 of our Code of Laws provides that the testimony of a victim need not be corroborated in prosecutions under this section." This charge was given in that section of the charge wherein the judge defined the State's burden of proving the statutory offenses charged. (Tr. 526).

[Doc. 32-1 at 1–2.] As stated, on June 9, 2014, Respondent filed a motion for summary judgment. [Doc. 44.] On August 7, 2014, Petitioner filed a response in opposition. [Doc. 60.] On August 12, 2014, Petitioner, with leave of this Court, again amended his Petition, withdrawing Grounds Three, Four, and Five. [Doc. 67.] Accordingly, Petitioner is

11

proceeding only as to Grounds One and Two, and the motion for summary judgment is ripe for review.

**APPLICABLE LAW**

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)  (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)  (I) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson*

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

<em>Procedural Bypass</em>

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts,

the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d

19

at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

**Ground One**

In Ground One, Petitioner contends trial counsel was ineffective because he elicited erroneous and prejudicial information regarding medical examinations in his cross-

examination of Dr. Dwight Reynolds.  The Court concludes Petitioner is not entitled to federal habeas corpus relief based on this allegation.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this

Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[7] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the

---

[7]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court evaluated Boyd's performance under the standard set forth in *Strickland*.  [App. 646–52.]  The PCR court found,

> Counsel also testified as to the physical examination report and the absence of a check mark next to the indicator for live semen.  Counsel testified his review of the transcript shows that on a single occasion he ma[y] have inadvertently referred to the check mark rather than the absence of the check mark.  Counsel testifies he merely misspoke.  Counsel further testified he repeatedly presented evidence to the jury regarding the absence of any physical evidence.  Further, in closing Counsel reminded the jury that absolutely no physical evidence had been found on any of the minor victims.
>
> ***
>
> The Court has reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly.  Further, this Court reviewed the Clerk of Court records regarding the subject conviction, the Applicant's records from the South Carolina Department of Corrections, the application for post-conviction relief, the transcripts and documents from the prior proceedings, and legal arguments of counsel.  Pursuant to S.C. Code Ann. § 17-27-80 (1985), this Court makes the following findings of fact based upon all of the probative evidence presented.

23

This Court finds counsels' testimony to be credible. This Court finds Counsel employed valid trial strategy for soliciting the information deemed by the Applicant to be prejudicial. Counsel's attempts to cast doubt upon the witnesses' credibility were reasonable and do not amount to ineffective assistance of Counsel. Moreover, the record reflects Counsel clearly informed the jury that physical evidence did not exist in the case at hand. Though Counsel may have misspoken, any confusion would have been quickly clarified by Counsel's repeated affirmations regarding the absence of physical evidence. As a result, this Court denies and dismisses all of the allegations raised by the Applicant in his amended application. This Court denies and dismisses this allegation, as well as any allegation raised at the hearing and not contained herein.

Therefore, this Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. <u>Strickland v. Washington</u>; <u>Cherry v. State</u>. The Court finds that the Applicant cannot satisfy either requirement of the <u>Strickland</u> test.

[App. 649–51.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. A review of the trial

transcript establishes that Dr. Reynolds confirmed numerous times that his examinations of the alleged victims were normal.  [*E.g.*, App. 325:10–14 (Dr. Reynolds indicating on direct examination that the examination of one alleged victim was normal); 325:22–326:2 (Dr. Reynolds indicating on direct examination that the examinations of three other alleged victims were normal); 327:25–328:2 (prosecutor asking on direct examination, "Now, I want to follow up a little bit more with your testimony about the fact that their examinations were normal."); 330:20 (prosecutor referring to normal examinations of the children); 334:19–24 (Dr. Reynolds confirming twice on cross-examination that the examinations of the four girls were normal); 335:6–9 (Dr. Reynolds confirming that he found nothing in any of the four girls to indicate sexual abuse).]  Additionally, in his closing arguments, Boyd repeated to the jury multiple times that the examinations of the alleged victims were normal.  [*E.g.*, App. 481:17–20; 482:5–10; 490:21–23.]  Accordingly, the record supports the PCR court's finding that even if Boyd misspoke when he referenced a check mark, rather than a place for a check mark, indicating a finding of live sperm in the vagina during an exam,[8] any confusion would have been clarified by the repeated affirmations regarding the absence of physical evidence.[9]  Therefore, Petitioner has not established that the PCR court's

---

[8]As stated, the PCR court found Boyd's testimony that he misspoke to be credible. [App. 651.]  The PCR court's determination with respect to credibility is entitled to deference.  *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

[9]Petitioner argues that it is unreasonable to conclude that misspeaking was reasonable trial strategy.  [Doc. 60 at 10.]  Petitioner seems to argue that Boyd employed a bad trial strategy because Boyd conceded that he knew Dr. Reynolds would say there

decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief. Accordingly, Respondent's motion for summary judgment should be granted with respect to this ground.

**Ground Two**

In Ground Two, Petitioner contends trial counsel was ineffective because he elicited erroneous and prejudicial information during the cross-examination of a victim regarding anal intercourse when the State had alleged only lewd act and had not elicited any testimony amounting to rape from this witness. The Court concludes Petitioner is not entitled to federal habeas corpus relief based on this allegation.

Here, the PCR court evaluated Boyd's performance under the standard set forth in *Strickland*. [App. 646–52.] The PCR court found,

> Counsel also testified as to the allegation he elicited prejudicial testimony from a minor victim regarding anal rape. Counsel testified the purpose behind this line of examination was to show Dr. Reynolds found no physical evidence whatsoever. Counsel felt the claim of repeated anal rape with the absence of physical evidence weakened the child's allegations. It created credibility questions as to her allegations as a whole where the evidence did not support anal rape.

> ***

> The Court has reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the

was no physical evidence and that the State's theory was that physical evidence was inconsequential. [*Id.* at 7–9.] The PCR court determined that Boyd employed a valid trial strategy. [App. 651.] The Supreme Court stated in *Strickland* that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690. Petitioner has failed to establish that the PCR court's determination was contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts before the court.

hearing, passed upon their credibility, and weighed the testimony accordingly. Further, this Court reviewed the Clerk of Court records regarding the subject conviction, the Applicant's records from the South Carolina Department of Corrections, the application for post-conviction relief, the transcripts and documents from the prior proceedings, and legal arguments of counsel. Pursuant to S.C. Code Ann. § 17-27-80 (1985), this Court makes the following findings of fact based upon all of the probative evidence presented.

This Court finds counsels' testimony to be credible. This Court finds Counsel employed valid trial strategy for soliciting the information deemed by the Applicant to be prejudicial. Counsel's attempts to cast doubt upon the witnesses' credibility were reasonable and do not amount to ineffective assistance of Counsel. Moreover, the record reflects Counsel clearly informed the jury that physical evidence did not exist in the case at hand. Though Counsel may have misspoken, any confusion would have been quickly clarified by Counsel's repeated affirmations regarding the absence of physical evidence. As a result, this Court denies and dismisses all of the allegations raised by the Applicant in his amended application. This Court denies and dismisses this allegation, as well as any allegation raised at the hearing and not contained herein.

Therefore, this Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. Strickland v. Washington; Cherry v. State. The Court finds that the Applicant cannot satisfy either requirement of the Strickland test.

[App. 650–51).]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme

27

Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.  Additionally, even if Boyd was deficient for eliciting testimony from this witness about anal intercourse, Petitioner is unable to establish there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different where Petitioner was charged with and found guilty of three counts of criminal sexual conduct with a minor first degree, and three other State witnesses testified on direct examination to sexual battery by Petitioner when they were under eleven years of age.[10]  [*See, e.g.*, App. 132 (testimony by WM, who was ten years old when she testified, that Petitioner put his private part in her back private part and front private part); 199 (testimony by SR, who was seven years old when she testified, that Petitioner stuck his finger in her private); 249 (testimony by PD, who was thirteen years old when she testified, that when she was ten, Petitioner put something in her front or back side that hurt).]  Accordingly, Respondent's motion for summary judgment should be granted with respect to this ground.

---

[10]Under South Carolina law, "[a] person is guilty of criminal sexual conduct with a minor in the first degree if . . . the actor engages in sexual battery with a victim who is less than eleven years of age."  S.C. Code Ann. § 16–3–655(A)(1).  The South Carolina Code defines the term "sexual battery" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes."  S.C. Code Ann. § 16–3–651(h).

**<u>CONCLUSION AND RECOMMENDATION</u>**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.


<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 8, 2015
Greenville, South Carolina