IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Bynum Rayfield, | ) | |
| | ) | Civil Action No. 8:13-3391-TMC |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Willie E. Eagleton, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, a state prisoner proceeding pro se, brought this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that Respondent's motion for summary judgment (ECF No. 44) be granted and the petition be denied. (ECF No. 72). Petitioner timely objected to the Report. (ECF No. 79).

The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). In making that determination, the court is charged with conducting a de novo review of those portions of the Report to which either party specifically objects. *See* 28 U.S.C. § 636(b)(1). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. *See id.* However, the court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In that case, the court reviews the Report only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## I. Ineffective Assistance of Counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91. Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir.1989).

## II. Discussion

In his original petition, Petitioner raised five grounds for relief. (ECF No.1, Petition). However, in his Amended Petition, Petitioner withdrew Grounds Three, Four, and Five. (ECF No. 67, Am. Petition). Accordingly, the Magistrate Judge addressed only Grounds One and Two.

In Ground One, Petitioner contends that his trial counsel was ineffective when he elicited erroneous information during the cross-examination of Dr. Dwight Reynolds. Dr. Reynolds performed the medical examination on four of the victims and testified that all the examinations were "normal" - meaning he did not find physical evidence of injury, but that he could not rule out penetration or other types of abuse because penetrating injuries usually do not leave scarring

or other physical evidence. He testified that these types of injuries can heal very quickly- within a matter of days or a couple of weeks. (ECF No. 45-2 at 142).

On cross-examination, trial counsel questioned Dr. Reynolds about the form he filled out in regard to the examinations as follows:

> Q: Okay. Now let me just start at the bottom of that. At the bottom it has a check mark for diagnostic findings. And does that mean that's an evidence - - you've found evidence of a penetrating injury if you checked that?
>
> A: Practically speaking, that category is limited to persons in whom I would find living sperm in the vagina.
>
> Q: Is this a classification that was developed by you or someone else?
>
> A: That's been developed, with some variation, nationwide. It was not mine personally, no.
>
> Q: Is this what's called the Adam's Classification?
>
> A: I'm not aware of that name.
>
> Q: But you've got diagnostic findings, then above that you've got "consistent findings". And what does "consistent findings" mean?
>
> A: As an example, in a female that would be injuries that almost certainly are caused by sexual abuse, such as the cleft.
>
> Q: So that's consistent with an injury that, with a high degree of likelihood, would be caused by that kind of injury?
>
> A: Yes.
>
> Q: An then you've got a next category of "suspicious findings." What is that?
>
> A: Well, it's - - we might find notches or abrasions, scarring that you mentioned, other things that it would be would be hard to explain any way except from sexual abuse.
>
> Q: And then you've got something called "Non-Specific Findings", and what is that?
>
> A: Non-specific findings are a little vaguer and would indicate things that might have been caused by sexual abuse or might have been caused by something else.

> Q: And then you've got the "Normal Exam", which is what you found in this case?
>
> A: Yes.
>
> Q: Okay. And on each of these girls you examined, you found a normal exam. Is that correct?
>
> A: That is correct.
>
> Q: And in fact, there's nothing here that says - - it says "does not rule out physical sexual assault", but there's not a category here for "exam rules out physical, sexual abuse". That's not possible, according to your testimony. Is that correct?
>
> A: That is correct.
>
> Q: But based on your examination, you found nothing in any of these four girls, based on the physical findings, to indicate sexual abuse?
>
> A: That's correct.
>
> Q: Thank you.

(ECF No. 45-2 at 147-49).

In his PCR proceeding, Petitioner specifically alleged a claim of ineffective assistance of counsel based upon trial counsel's statement that "[a]t the bottom [the form] has a check mark for diagnostic findings." Petitioner contended that trial counsel elicited erroneous information regarding the results of the examinations of the victims. (ECF No. 45-4 at 101, 120). At the hearing, trial counsel testified that he thought he had asked the question in regard to whether "there was a place for a checkmark, not that there was a checkmark." (ECF No. 45-4 at 121).

The PCR court found that the record reflected that the jury was clearly informed that physical evidence did not exist and despite counsel's misstatement, "any confusion would have been quickly clarified by Counsel's repeated affirmations regarding the absence of evidence." (ECF No. 45-4 at 153). The Magistrate Judge found that the PCR court's determination was neither contrary to nor an unreasonable application of Supreme Court precedent. (Report at 24).

The Magistrate Judge noted that Dr. Reynolds had confirmed numerous times that his examinations were normal and trial counsel repeated to the jury multiple times that the exams were normal. *Id.*

In his objections, Petitioner contends that trial counsel's error was not merely a misstatement and would not have been trial strategy. (Objections at 8). He contends that trial counsel mispoke twice and "[i]t was a major error and in the eyes of the jury, a concession from the defense that sperm was found." (Objections at 6). He argues that the jury was left trying to determine "who put the sperm in the vagina." (Objections at 9). Further, he argues that closing arguments are not evidence and that a mistake, such as trial counsel's misstatements, cannot be trial strategy. (Objections at 8).

First, the court finds that in its analysis the PCR court addressed the claims of ineffectiveness of counsel together in its section of the order entitled "Findings of Fact and Conclusion of Law:"

> The Court has reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly. Further, this Court reviewed the Clerk of Court records regarding the subject conviction, the Applicant's records from the South Carolina Department of Corrections, the application for post-conviction relief, the transcripts and documents from the prior proceedings, and legal arguments of counsel. Pursuant to S.C. Code Ann. § 17-27-80 (1985), this Court makes the following findings of fact based upon all of the probative evidence presented.
>
> This Court finds counsels' testimony to be credible. This Court finds Counsel employed valid trial strategy for soliciting the information deemed by the Applicant to be prejudicial. Counsel's attempts to cast doubt upon the witnesses' credibility were reasonable and do not amount to ineffective assistance of Counsel. Moreover, the record reflects Counsel clearly informed the jury that physical evidence did not exist in the case at hand. Though Counsel may have misspoken, any confusion would have been quickly clarified by Counsel's repeated affirmations regarding the absence of physical evidence. As a result, this Court denies and dismisses all of the allegations raised by the Applicant in his

> amended application. This Court denies and dismisses this allegation, as well as any allegation raised at the hearing and not contained herein.
>
> Therefore, this Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. <u>Strickland v.Washington</u>; <u>Cherry v. State</u>. The Court finds that the Applicant cannot satisfy either requirement of the <u>Strickland</u> test.

(ECF No. 45-4 at 152-53). Clearly, the PCR court first addressed trial counsel's questioning of the victim and other witnesses as trial strategy. Then, PCR turned to the claim regarding the physical exams and found any confusion created by trial counsel's misstatement was cleared up and the jury was told there was no physical evidence.[1]

Dr. Reynolds testified about the difference between an acute sexual assault exam, also known as a rape kit examination, where the examiner is looking for semen and blood, and the kind of examinations he performed. (ECF No. 45-2 at 137-38). He testified that to find semen or blood, an exam must be conducted between 48-72 hours after the assault. (ECF No. 45-2 at 138). Dr. Reynolds testified that, during his examinations of these victims, he did not expect to find any blood or semen because the exams were not performed within 48-72 hours of any alleged sexual assault. (ECF No. 45-2 at 138-39). The date of the last alleged sexual assault was April 13, 2001, and Dr. Reynolds performed his examinations in May 2001. (ECF No. 45-2 at 138). Moreover, he testified that the tears and injuries caused by sexual assault "heal very fast and very completely" within a matter of days or certainly within a couple of weeks. (ECF No. 45-2 at 142).

Despite any misstatement by counsel, Petitioner's argument that the jury was left to wonder about sperm and who put the sperm into the victims is without merit. The court does not

---

[1] The court also finds that there was only one misstatement. The second alleged misstatement when read in its entirety is clearly trial counsel referring to the different categories listed on the form and it is not, as Petitioner alleges, trial counsel's statement that there were diagnostic findings by Dr. Reynolds.

see how there could be any confusion. Dr. Reynolds clearly and repeatedly testified that there was no semen found and he did not expect there to be any because the exam was performed many weeks after the last alleged sexual assault. Moreover, as the PCR court noted, trial counsel clarified in his argument that there was no physical evidence. Accordingly, the court finds Petitioner's objections to be without merit.

In Ground Two, Petitioner contends that his trial counsel was ineffective when he elicited testimony regarding rape and anal intercourse during the cross-examining of one of the victims, W.M., because these specific acts were not the basis for the lewd conduct charges in relation to this particular victim.

At trial, on direct examination, W.M., who was seven years old at the time of the trial, testified that Petitioner forced her to perform oral sex and touched her private parts and her butt with his hand. (ECF No. 45-2 at 25-26). During cross examination of W.M., the following questioning took place:

> Q: What you have told us today is you've said [Petitioner] put his private in your butt, is that right?"
>
> A: Yes.
>
> Q: Okay. Did it hurt when he did that?
>
> A: Yes.
>
> Q: Okay. Did it hurt bad when he did that?
>
> A: Yes.
>
> Q: And I believe you told Ms. Caldwell that happened two times, is that right?
>
> A: Yes.

(ECF No. 45-2 at 33).

At the PCR hearing, trial counsel testified that the purpose behind this questioning was to show that despite allegations of anal penetration, Dr. Reynolds did not find any physical evidence. (ECF No. 45-4 at 122, 123). He further stated that W.M. testified that it hurt her and "yet there were no physical manifestations." (ECF No. 45-4 at 123). He testified that he recognized that by asking the questions he was bringing up another act that Petitioner was not on trial for, but he did not think it was prejudicial because there were so many other accusations of sexual abuse. Trial counsel acknowledged that "it was a strategic choice to attack W.M.'s credibility where physical evidence did not support anal sex" (ECF No. 45-4 at 123).

The PCR court found that trial counsel employed a valid trial strategy in eliciting the information and that trial counsel's attempted to cast doubt upon the witnesses' credibility were reasonable and did not amount to ineffective assistance of counsel. (ECF No. 45-4 at 153). The Magistrate Judge found that the PCR court's determination was neither contrary to nor an unreasonable application of Supreme Court precedent. (Report at 27). Further, the Magistrate Judge stated that even if trial counsel was deficient, Petitioner has not established prejudice because Petitioner was convicted of three counts of CSC with a minor first degree and three other victims testified Petitioner committed sexual battery when they were under eleven. (Report at 28).

In his objections, Petitioner attempts to discredit the other witnesses' testimony. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (stating federal habeas review does not redetermine the credibility of witnesses). The relevant inquiry in conducting an ineffective assistance of counsel analysis in regard to trial strategy is whether trial counsel's performance fell below an objective standard of reasonableness, not whether trial counsel chose the best of all possible strategies. Here, the court finds trial counsel employed a conceivable trial strategy.

And like the Magistrate Judge, the court also concludes that even if trial counsel was deficient in his cross-examination of W.M., Petitioner cannot establish prejudice. Reviewing the entire record, including the testimony of all five victims, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Therefore, the court finds Petitioner's objections are without merit.

Accordingly, the court adopts the Report (ECF No. 72) and incorporates it herein. It is therefore **ORDERED** that Respondent's Motion for Summary Judgment (ECF No. 44) is **GRANTED**, and the Habeas Petition is **DENIED**.

In addition, a certificate of appealability will not issue to a prisoner seeking habeas relief absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this case, the court finds that the petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

February 10, 2015
Anderson, South Carolina